UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------x
:
STEPHEN C. MCCULLOUGH,    :   3:23-CV-1367 (KAD)
*Plaintiff*               :
                          :
v.                        :
                          :
TOWN OF ROCKY HILL,       :
*Defendant*               :   **November 9, 2023**
                          :
------------------------------------------------x

### RULING GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*, AND RECOMMENDING THAT THE COMPLAINT BE DISMISSED WITH PREJUDICE

On October 18, 2023, *pro se* plaintiff Stephen C. McCullough commenced this action against defendant Town of Rocky Hill ("Rocky Hill") arising from Rocky Hill's tax sale of the plaintiff's property, located at 140 Hayes Road, Rocky Hill, CT (hereinafter, the "Property"). (*See* Doc. No. 1). The plaintiff alleges that Rocky Hill and its tax collector have "misused" their authority and committed fraud as to the amount of property taxes owed by the plaintiff, as well as the amount demanded for the plaintiff to redeem the Property prior to the tax sale's recording. (*See generally id.*). The plaintiff further contends that Rocky Hill's actions have deprived him of his "due process rights, civil rights, and equal protection under the law" and that Connecticut General Statutes ("C.G.S.") §§ 12-157 and 12-159 are unconstitutional. (*Id.* at 6). Nevertheless, the plaintiff is solely seeking an injunction restraining Rocky Hill from recording the tax sale of his Property.[1] (*Id.* at 5).

---

[1] In connection with the Complaint, the plaintiff also sought an "Immediate Temporary Restraining Order Ex Parte," which the Court (Dooley, J.) has since denied. (*See* Doc. No. 12).

On October 23, 2023, the Court (Dooley, J.) referred to the undersigned the plaintiff's Motion to Proceed *In Forma Pauperis* ("IFP") (Doc. No. 2), as well as an initial review of the Complaint pursuant to 28 U.S.C. § 1915. (*See* Doc. No. 11). For the following reasons, the plaintiff's Motion to Proceed IFP (Doc. No. 2) is **GRANTED**, and the Court respectfully recommends that the plaintiff's Complaint be **DISMISSED with prejudice**.

I.  LEGAL STANDARD

Section 1915 provides, in relevant part:

> [A]ny court of the United States may authorize the commencement of any suit . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). The same statute that authorizes the Court to grant *in forma pauperis* status to a plaintiff also contains a provision that protects against the abuse of this privilege. Subsection (e) provides that the Court "shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A claim is "frivolous" if it lacks an arguable basis either in law or fact, or when a dispositive defense, such as lack of subject matter jurisdiction, clearly exists on the face of the complaint. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Patterson v. Rodgers*, 708 F. Supp. 2d 225, 232 (D. Conn. 2010) ("In analyzing whether Plaintiff's claims are 'frivolous,' 'fail to state a claim upon which relief may be granted,' or barred by immunity, the Court necessarily determines whether it has subject matter jurisdiction over the action."). Indeed, "[w]here there is a lack of subject matter jurisdiction, dismissal is mandatory." *See Manway Constr. Co. v. Housing Authority of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983).

Courts are required to read *pro se* complaints "liberally," such that they are "interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted)); *see also Thaxton v. Simmons*, No. 10-CV-1318 (MAD) (RFT), 2012 WL 360104, at *7 (N.D.N.Y. Jan. 5, 2012) ("It is the Court's view that Plaintiff has barely nudged across the line from conceivable to plausible. Nevertheless, because we are bound to give the Plaintiff the benefit of every reasonable inference to be drawn from the allegations in the Complaint, we recommend allowing this claim to proceed.") (citations omitted), *report and recommendation adopted*, No. 10-CV-1318 (MAD) (RFT), 2012 WL 360141 (N.D.N.Y. Feb. 2, 2012).

II.  FINANCIAL AFFIDAVIT

The Court determines indigency within the meaning of Section 1915 by reviewing an applicant's assets and expenses as typically stated on a declaration or financial affidavit submitted with the motion to proceed IFP. As a general matter, applicants seeking IFP status are not required to "demonstrate absolute destitution." *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (*per curiam*). Rather, they must establish that they cannot afford to pay for both the necessities of life and the costs of litigation. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). "The decision of whether to grant an application to proceed [IFP] rests within the sound discretion of the court." *Robert C. v. Kijakazi*, No. 3:22-CV-120 (SRU), 2022 WL 2287600, at *1 (D. Conn. Feb. 10, 2022) (citing *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983)).

Here, the financial affidavit submitted in connection with the plaintiff's IFP application indicates that he has been unemployed since 2017, and that, while he presently receives disability payments and "non-cash" SNAP benefits, his monthly obligations exceed those payments. (*See*

3

Doc. No. 2 at 3–4). Consequently, the Court concludes that the plaintiff has adequately established his indigency, and an inability to pay the standard $402 civil case filing fee. (*See id.*). Accordingly, the Court hereby **GRANTS** the plaintiff's Motion to Proceed IFP.[2]

III.    MERITS OF THE COMPLAINT

At its core, the Complaint describes a dispute involving an alleged discrepancy in the amount of delinquent municipal taxes owed on the plaintiff's Property, and Rocky Hill's related efforts to collect the plaintiff's unpaid municipal taxes by way of a tax sale of the Property. (*See generally* Doc. No. 1). More specifically, the plaintiff alleges that the true amount of delinquent municipal taxes owed on the Property is over $60,000 less than Rocky Hill's estimate, and that accordingly, the Court must enjoin Rocky Hill from "seizing the plaintiff's house and recording the tax sale deed on October 20, 2023 or thereafter." (*Id.* at 6). The plaintiff acknowledges that Rocky Hill executed a tax sale of the Property on April 20, 2023 and that the plaintiff's opportunity to redeem the Property by paying off the outstanding municipal taxes expired on October 19, 2023.[3] (*Id.*). However, the plaintiff contends that Rocky Hill's "misuse" of authority has deprived him of his "due process rights, civil rights, and equal protection under the law," and further claims that C.G.S. §§ 12-157 and 12-159 are unconstitutional, insofar as: (a) § 12-157 "denies plaintiff's right to due process"; and (b) § 12-159 is "not constitutional when the town's actors are criminal."

---

[2]  Based on the Court's own review, it appears that the plaintiff has filed at least one previous lawsuit in this District. *See McCullough v. Connecticut*, 3:01-CV-1033 (DJS). This suggests that the plaintiff may not have been entirely forthcoming in his IFP application. (*See* Doc. No. 2 at p. 5 ("All prior cases must be listed.")). Nevertheless, given the age of the plaintiff's prior lawsuit, the Court finds that denying the plaintiff IFP status here would not "spare prospective defendants the inconvenience and expense of answering [a frivolous] complaint[]," but instead would prevent an "indigent litigant[] . . . meaningful access to the federal courts." *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Patterson v. Rodgers*, 708 F. Supp. 2d 225, 231 (D. Conn. 2010) ("The Court has not found any case that has denied a non-prisoner *in forma pauperis* status based solely on his failure to answer questions regarding prior lawsuits."). However, the plaintiff is advised that failure to include his previous lawsuit(s) in any future Motion for Leave to Proceed IFP may result in the summary denial of any such application.

[3]  As of the date of this filing, it is not clear to the Court whether the tax sale deed of the Property has been recorded, thereby vesting title to the Property to the winning bidder of the tax sale held on April 20, 2023. If it has, the Court notes that the plaintiff's request for an injunction may well be moot.

(*Id.* at 7–8). Nevertheless, the plaintiff explicitly acknowledges that "money damages cannot compensate for severe and irreparable harm," and consequently, seeks only injunctive relief in connection with the tax sale.

Importantly, the plaintiff also acknowledges that on April 17, 2023—three days before Rocky Hill executed the tax sale of his Property—he filed a complaint in state court seeking, *inter alia*, to enjoin the tax sale. (*Id.* at 6). The plaintiff further admits that his application for injunctive relief in state court was denied on April 19, 2023 and that the instant lawsuit "in is reference to [the state court action]."[4] (*Id.*).

As set forth herein, the Court respectfully recommends that the plaintiff's Complaint be **DISMISSED with prejudice**, because this Court lacks subject matter jurisdiction to consider the plaintiff's sole claim for injunctive relief, and the plaintiff otherwise lacks standing to bring a Section 1983 claim for injunctive relief against Rocky Hill.

    A.    **This Court Lacks Subject Matter Jurisdiction**

This Court lacks subject matter jurisdiction over this matter, because: (1) the Tax Injunction Act and related doctrine of comity plainly foreclose the plaintiff's sole claim for injunctive relief; and (2) the plaintiff's claim is similarly barred by the well-established *Rooker-Feldman* doctrine.

---

[4] On October 20, 2023, the plaintiff filed an "Addendum," which the Court has duly considered in connection with the instant initial review of the Complaint. (Doc. No. 13). The plaintiff's Addendum does not set forth any new factual allegations, but rather, primarily appears to clarify the "Payoff Statement" provided to the plaintiff by counsel for Rocky Hill on October 17, 2023, which is attached to the Complaint as "Exhibit A." (*See* Doc. No. 1-1). The Addendum further reiterates the plaintiff's allegations that the tax sale conducted on April 20, 2023 was unlawful, and that any tax delinquencies on his part "have occurred by fault of the tax collector." (*See* Doc. No. 13 at 2).

### 1.      The Tax Injunction Act and Related Doctrine of Comity

As an initial matter, this Court lacks subject matter jurisdiction to award the injunctive relief sought in the plaintiff's Complaint, because doing so would plainly run afoul of the Tax Injunction Act ("TIA"), as well as the related doctrine of comity.

It is well-established that "[f]ederal courts generally abstain from cases that challenge state taxation schemes, due to 'a proper reluctance to interfere by prevention with the fiscal operations of the state governments.'" *See Levin v. Com. Energy, Inc.*, 560 U.S. 413, 422 (2010) (internal citations omitted).  In 1937, Congress "codified that long-standing judicial principle," *see Dorce v. City of New York*, 2 F.4th 82, 96 (2d Cir. 2021), by enacting the TIA, which mandates that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341; *see also Miller v. N.Y. Div. of Tax App.*, 480 F. Supp. 2d 574, 578 (E.D.N.Y. 2007) ("The [TIA] prevents the federal courts from exercising subject matter jurisdiction over a plaintiff's attempt to prevent a state from collecting taxes.") (citations omitted).  The TIA's jurisdictional bar also applies to cases brought under Section 1983, or otherwise alleging a violation of civil rights. *Speer v. City of New London*, 537 F. Supp. 3d 212, 225 (D. Conn. 2021) (citing *Hickmann v. Wujick*, 488 F.2d 875, 876 (2d Cir. 1973)).

Adjacent to the jurisdictional bar imposed by the TIA is the doctrine of comity, which further restricts the ability of the federal courts to "hear and decide cases bearing on state and local taxation." *Speer*, 537 F. Supp. 3d at 226.  "More embracive than the [TIA], the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010).  "The [Supreme Court] has ruled that the comity doctrine prohibits federal courts from

6

granting declaratory or injunctive relief against state taxing authorities in favor of taxpayer-plaintiffs, and from awarding damages personally against the taxing officials in suits contesting the constitutionality of state taxes brought under 42 U.S.C. § 1983." *Abuzaid v. Mattox*, 726 F.3d 311, 315 (2d Cir. 2013) (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 107, 115–16 (1981)).

Here, the injunctive relief sought by the plaintiff certainly represents an interference with municipal tax enforcement, namely, Rocky Hill's attempt to collect on the plaintiff's delinquent municipal taxes via a tax sale of his Property. Further, in seeking to enjoin the tax sale, the plaintiff undoubtedly asks this Court to disrupt an "aspect of [Rocky Hill's] administration, calculation, or collection" of his delinquent municipal taxes, and otherwise explicitly challenges his tax liability by claiming that he owes far less in municipal taxes than Rocky Hill estimates. *Cf. Dorce*, 2 F.4th at 98. Moreover, courts in this District have regularly found that the Connecticut state courts do provide a "plain, speedy, and efficient remedy" to challenge municipal tax collections. *See, e.g.*, *Speer*, 537 F. Supp. 3d at 212 ("in view of [the plaintiff's] ample state court remedies, the [TIA]—as well as principles of comity—deprives this Court of any power to decide [the plaintiff's] claims"); *Piedmont Gardens, LLC v. Leblanc*, 168 F. Supp. 3d 391, 399 (D. Conn. 2016), *aff'd*, 733 F. App'x 576 (2d Cir. 2018). Indeed, by initially seeking an injunction in state court, the plaintiff irrefutably availed himself of the Connecticut state courts, and the statutory scheme for challenging enforcement of the plaintiff's tax liability.

Accordingly, the Court finds that both the TIA and related doctrine of comity preclude this Court from exercising subject matter jurisdiction over the plaintiff's sole claim for injunctive relief. For this reason alone, the Court respectfully recommends that the plaintiff's Complaint be **DISMISSED with prejudice**.

### 2. The Plaintiff's Claims Are Barred By The *Rooker-Feldman* Doctrine

Notwithstanding the TIA's jurisdictional bar, the Court further finds that the instant lawsuit is barred by the *Rooker-Feldman* doctrine, insofar as it seeks review and rejection of the state court's refusal to enjoin the tax sale of the plaintiff's Property. "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce*, 2 F.4th at 101 (citing 28 U.S.C. § 1257). "The doctrine 'is confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005)). More precisely, "[f]or the *Rooker-Feldman* doctrine to apply, (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Murdock v. Rosen*, No. 3:23-CV-0063 (JAM), 2023 WL 3006808, at *2 (D. Conn. Apr. 19, 2023) (citing *Sung Cho v. City of New York*, 910 F.3d 639, 645 (2d Cir. 2018)).

Here, by his own admission, the plaintiff has brought the instant lawsuit in response to the state court judgment entered on April 19, 2023, which denied the plaintiff's application to enjoin Rocky Hill from executing the tax sale of his Property. (Doc. No. 1 at 6–7). This is precisely the sort of "invitation to review and reject a state court judgment" that *Rooker-Feldman* forbids. *Powell v. Ocwen Loan Servicing, LLC*, No. 3:21-CV-01605 (KAD), 2022 WL 4095784, at *2 (D. Conn. Sept. 7, 2022). Indeed, the plaintiff is no doubt complaining of an injury (*i.e.*, the loss of

his Property by way of Rocky Hill's tax sale), which was caused by a state court judgment (*i.e.*, the denial of the plaintiff's application to enjoin the tax sale) rendered approximately six months prior to the plaintiff commencing this action. *See Sung Cho*, 910 F.3d at 645. In doing so, the plaintiff effectively asks this Court to reverse the state court's judgment, which explicitly found that the plaintiff had not established adequate grounds to challenge the tax sale of his Property, consistent with C.G.S. §§ 12-157. *See McCullough v. Town of Rocky Hill*, Superior Court, Judicial District of New Britain, Docket No. CV-23-5033551-S, Entry No. 104.00 (Apr. 19, 2023, *Knox. J.*); *see also Sung Cho*, 910 F.3d at 644 (*Rooker-Feldman* bars federal district courts from hearing "cases that function as *de facto* appeals of state-court judgments"). Moreover, courts in this Circuit have applied the *Rooker-Feldman* doctrine in circumstances much like those presented here, stemming from tax sales and their related state court proceedings. *See, e.g.*, *Homeowners Fin. Co. v. Lamont*, No. 3:20-CV-01282 (JCH), 2021 WL 4263376, at *9 (D. Conn. Sept. 20, 2021) (applying *Rooker-Feldman* where plaintiff "[did] not make any claims of injury beyond the sale of [the property] and the results of the state-court proceedings challenging the sale"); *Doherty v. Suffolk Cnty.*, No. 13-CV-6782 (JFB) (WDW), 2013 WL 6910334, at *3 (E.D.N.Y. Dec. 30, 2013) (*Rooker-Feldman* barred plaintiff's request for an order undoing a tax sale and enjoining the seizure of his premises).

The Court recognizes that the plaintiff's state court proceedings remain ongoing because, in addition to the aforementioned injunctive relief, the plaintiff's state court complaint also seeks a declaratory judgment. (*See* Doc. No. 1 at 6). Nevertheless, the Second Circuit has acknowledged the applicability of the *Rooker-Feldman* doctrine to interlocutory state court judgments that may not finally resolve the state litigation, provided that the judgment effectively "ended" the state court proceedings. *See Hoblock v. Albany Country Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005)

("federal suits challenging interlocutory state judgments may present difficult questions as to whether the state proceedings have 'ended' within the meaning *Rooker-Feldman* on the federal questions at issue.").

Here, given that the plaintiff's state court complaint itself sought to enjoin the tax sale of the Property, it follows that the state court's denial of such relief "ended" the state court proceedings with respect to the principal issue of whether the tax sale would move forward. *See, e.g.*, *1199SEIU United Healthcare Workers E. v. PSA Cmty. Servs.*, No. 20-CV-3611 (JGK), 2022 WL 484861, at *4 (S.D.N.Y. Feb. 16, 2022) (state court's injunction subject to *Rooker-Feldman* because it "'ended' the state court proceedings with respect to the issue of arbitrability"). Indeed, by the plaintiff's own admission, the tax sale auction was conducted as scheduled on April 20, 2023. (Doc. No. 1 at 6). As such, the Court finds that the state court's denial of the plaintiff's application for an injunction constitutes a "judgment" for the purposes of the *Rooker-Feldman* doctrine.

For the foregoing reasons, the Court finds that all of the requirements for the application of the *Rooker-Feldman* doctrine are met in this case and that, for this reason as well, this Court lacks subject matter jurisdiction over the plaintiff's claims.[5]

### B. The Plaintiff Lacks Standing To Bring A Section 1983 Claim For Injunctive Relief

In seeking the aforementioned injunctive relief, the Complaint explicitly invokes the Fourth, Fifth, and Fourteenth Amendments, and suggests that the plaintiff's claim arises under 42

---

[5] Insofar as the plaintiff generally challenges the constitutionality of C.G.S. § 12-157, *et seq.*, the Court notes that the statutory scheme set forth under Connecticut law as to tax sales is routinely found as compliant with due process, and otherwise constitutional. *See, e.g.*, *Assocs. Fin. Servs. of Am., Inc. v. Sorensen*, 46 Conn. App. 721, 728 (1997) ("Even if the tax collector were to misuse his authority and to subvert the fairness of the tax sale, that would not render General Statutes § 12-157 violative of procedural due process."). As such, even if the plaintiff were seeking declaratory relief as to the constitutionality of C.G.S. § 12-157, *et seq.*, any such claim would likely be subject to dismissal.

U.S.C. § 1983.  (*See* Doc. No. 1 at 3).  Insofar as the plaintiff purports to advance a Section 1983 claim for injunctive relief against Rocky Hill, that claim must be dismissed, because the plaintiff lacks constitutional standing to bring any such claim.[6]

"Undoubtedly, municipalities themselves are subject to suit under Section 1983." *Ortiz v. Bridgeport Police Dep't*, No. 3:14-CV-1614 (CSH), 2017 WL 2818980, at *3 (D. Conn. June 29, 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  To demonstrate municipal liability under Section 1983, "a plaintiff must establish that the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 287 (D. Conn. 2021) (quoting *Zherka v. DiFiore*, 412 F. App'x 345, 348 (2d Cir. 2011)).  Likewise, "[w]hen seeking injunctive relief against a municipality, a plaintiff has standing only if he can carry the burden of establishing that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *An v. City of New York*, 230 F. Supp. 3d 224, 228 (S.D.N.Y. 2017) (citing *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).  "This requires a plaintiff to show both (1) a likelihood of future harm and (2) the existence of an official policy or its equivalent." *Id.* at 216 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983)).

Here, even assuming that the plaintiff's Complaint has adequately alleged a likelihood of future harm (*i.e.*, the loss of the plaintiff's Property by way of Rocky Hill's tax sale), it unequivocally fails to sufficiently plead the existence of an official, Rocky Hill municipal policy

---

[6] Additionally, to the extent that the plaintiff's allegations could be construed as raising a Fifth/Fourteenth Amendment takings claim, it is well-established that a state may lawfully seize and sell property, including land, to recover the amount owed on delinquent property taxes, provided of course, that adequate notice is given. *See Jones v. Flowers*, 547 U.S. 220, 234 (2006) ("People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property.").  Here, the plaintiff does not dispute that he was tax delinquent, or that he was given notice of the impending tax sale of his Property.  As such, any takings claim arising therefrom must be dismissed.

or its equivalent as the driving force behind that alleged harm. *See Lyons*, 461 U.S. at 101–102. Rather, the plaintiff contends that Rocky Hill and its tax collector "misused" their authority and committed fraud as to the amount of property taxes owed by the plaintiff. The plaintiff also challenges the constitutionality of the statutory scheme set forth under *state law* as to tax sales. These allegations fail to allege the existence of an official Town of Rocky Hill municipal policy or its equivalent. As such, the plaintiff does not have standing to assert a claim for injunctive relief against Rocky Hill under Section 1983.

      **C.**     **Leave to Amend**

Rule 15(a) (2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." However, "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted). Here, any amendment of the Complaint would appear to be futile as the Court lacks subject matter jurisdiction over the claims against Rocky Hill for the reasons articulated above, and no amendment would cure the fundamental defects identified in this ruling.

IV.     <u>CONCLUSION</u>

For the reasons stated above, the plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. No. 2) is **GRANTED**. Nevertheless, the Court further recommends that the entire Complaint be **DISMISSED with prejudice**, insofar as this Court lacks subject matter jurisdiction to adjudicate the claims set forth therein, and the plaintiff lacks standing to make a claim for injunctive relief under Section 1983.

This is a recommended ruling.  *See* FED. R. CIV. P. 72(b)(1).  Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order.  *See* FED. R. CIV. P. 72(b)(2).  Any party receiving notice of an order or recommended ruling from the Clerk by mail shall have five (5) additional days to file any objection.  *See* D. CONN. L. CIV. R. 72.2(a).  Failure to timely object will preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 6(a), 6(e); D. CONN. L. CIV. R. 72.2; *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (*per curiam*); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Insofar as the plaintiff intends to file an Amended Complaint in this action, he may set forth his proposed amendments and/or address the Court's lack of subject matter jurisdiction in connection with any objections filed as to this recommended ruling.

Dated at New Haven, this 9th day of November 2023.

/s/ Robert M. Spector, U.S.M.J.
Robert M. Spector
United States Magistrate Judge